# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT of COLORADO

|  |  |
|---|---|
| (1)  J. ALAN KONECNY | § |
|              Plaintiff, | § |
| | § |
| | § |
| vs. | § |
| | § |
| (2)  CORE-MARK HOLDINGS CO., INC. (PFG) | § |
| (3)  PERFORMANCE FOOD GROUP (PFG) | § |
| (4)  MCGUIREWOODS LLP | § |
| (5)  SCOTT MCPHERSON | § |
| (6)  CHRIS HOBSON | § |
| (7)  JOHN CORNYN | § |
|              Defendants. | § |
| | § |

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
4:16 pm, Feb 10, 2025
**JEFFREY P. COLWELL, CLERK**

Civil Case No. 25-CV-_____

DEMAND FOR JURY TRIAL

**COMPLAINT FOR VIOLATIONS OF: THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) (18 U.S.C. § 1962) AND SARBANES-OXLEY ACT (18 U.S.C. § 1514A), AND DODD-FRANK ACT (15 U.S.C. § 78u-6(h)); OBSTRUCTION OF JUSTICE (18 U.S.C. § 1505), CONSPIRACY TO DEFRAUD THE UNITED STATES (18 U.S.C. § 371), WIRE FRAUD (18 U.S.C. § 1343), DEPRIVATION OF RIGHTS (18 U.S.C. § 242), WHISTLEBLOWER RETALIATION (18 U.S.C. § 1513), FRAUD, AND BREACH OF CONTRACT**

COMES NOW, J. Alan Konecny, Plaintiff, in the above-styled and numbered Cause, and presents this FEDERAL CIVIL ACTION against Defendants and for cause of same would state the following:

8. This is a multiple-violation, Federal Civil Action with Demand For Jury Trial on behalf of the Plaintiff. This complaint is filed Pro Se by Plaintiff with outlined lawful expectations of this Court and Opposing Counsel as outlined herein. The right to appear pro se in a civil case in federal court is defined by statute 28 U.S.C. § 1654.

9. Amendment Seven to the United States Constitution was ratified on December 15, 1791, which protects the right for citizens to have a jury trial in federal court regarding civil cases, it also prohibits judges in these trials from overruling facts revealed by the jury.

## SUMMARY OF ACTION

10. Plaintiff J. Alan Konecny, pro se, has filed this federal civil complaint in the Eastern District of Texas, Sherman Division, for violations of multiple federal statutes, including the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962), Obstruction of Justice (18 U.S.C. § 1505), Conspiracy to Defraud the United States (18 U.S.C. § 371), Wire Fraud (18 U.S.C. § 1343), Deprivation of Rights Under Color of Law (18 U.S.C. § 242), Whistleblower Retaliation (18 U.S.C. § 1513), Fraud, and Breach of Contract, Violations of Sarbanes-Oxley Act (18 U.S.C. § 1514A), and Violations of Dodd-Frank Act (15 U.S.C. § 78u-6(h)), Civil Contempt of Court, Criminal Contempt of Court (18 U.S.C. § 401), Deprivation of Property Under Color of Law (18 U.S.C. § 242) and other violations outlined herein.

11. The complaint is filed against Core-Mark Holdings Co., Inc., Performance Food Group (PFG), McGuireWoods LLP, John Cornyn, Scott McPherson and Chris Hobson, who have engaged in fraudulent financial misconduct, whistleblower retaliation, obstruction of justice and other illegal acts defined in detail herein, and summarized below:

    a. Defendant Core-Mark and PFG failed to honor settlement payments owed to the Plaintiff from the Fleming Companies Class Action Settlement which resulted in the creation of Defendant CORE-MARK HOLDING CO, INC., Fleming Companies Inc. Securities Derivative Litigation was centralized in the Eastern District of Texas, Texarkana Division, under Case No. 5:02-cv-00178

    b. Defendant McGuireWoods LLP aided in the conspiracy to deprive the Plaintiff of his funds and refused a fast settlement, required by law, for their own financial gain fighting this Whistleblower Plaintiff.

c.   Defendant John Cornyn - as Texas Attorney General, <u>as a private citizen between terms</u>, and as the US Senator from Texas obstructed justice by interfering with the Plaintiff's ability to seek assistance from federal agencies (SEC, DOJ, DOL) to recover his settlement. A criminal complaint was filed for same, by this Plaintiff, on 01/20/2025. EXHIBIT XXXXX

d.   The defendants engaged in wire fraud, unlawfully redirecting Plaintiff's settlement payments and misallocating funds.

e.   The defendants engaged in retaliatory actions against Plaintiff for exposing securities fraud and corporate misconduct.

## JURISDICTION AND VENUE

12. Jurisdiction is proper under 28 U.S.C. § 1331 (**federal question jurisdiction**) because Plaintiff asserts claims under RICO (18 U.S.C. § 1962), Sarbanes-Oxley, Dodd-Frank, obstruction of justice, and whistleblower retaliation.

13. Jurisdiction is further proper under 18 U.S.C. § 1964(c), which grants federal courts authority over civil RICO claims.

14. Supplemental jurisdiction (28 U.S.C. § 1367) applies for state law claims of fraud, breach of contract, and unjust enrichment.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Plano, Texas, within the jurisdiction of the Eastern District of Texas, Sherman Division.

16. Defendants engaged in business activities and committed acts of fraud, whistleblower retaliation, and obstruction of justice affecting Plaintiff while he resided in Collin County, Plano, Texas.

## THE PARTIES

17. **Plaintiff, J ALAN KONECNY** is an individual formerly residing in Plano, Texas, the whistleblower and claimant under the Fleming Companies Class Action Settlement that resulted in the formation of Core-Mark Holdings Co., Inc. Plaintiff played THE critical role in exposing fraudulent vendor chargebacks and false accruals within Fleming Companies, leading to corporate restructuring.

    a.  jalankonecny@gmail.com

    b.  469-734-2453

    c.  Mailbox: 125 W Virginia Ave #265 Gunnison CO. 81230 (not monitored)

    d.  NO PHYSICAL or PERMANENT ADDRESS EXISTS

18. **Defendant CORE-MARK HOLDINGS CO., INC.**, (Core-Mark) a holding company created as a result of Fleming Companies Inc. demise for massive Securities Fraud. Fleming Companies Inc. Securities Derivative Litigation was centralized in the Eastern District of Texas, Texarkana Division, under Case No. 5:02-cv-00178. And is a corporation registered in Delaware, headquartered in Texas, and a successor entity to Fleming Companies, legally responsible for settlement payments owed to this Plaintiff.

    a.  ethics.matter@pfgc.com

    b.  1500 Solana Boulevard, Suite 3400, Westlake, TX 76262

    c.  (833) 532-1581

19. **Defendant PERFORMANCE FOOD GROUP (PFG)** the parent Company of Defendant Core-Mark liable for fraudulent misallocation of funds

    a.  ethics.matter@pfgc.com

    b.  12500 West Creek Parkway, Richmond, VA 23238

    c.  Phone: (804) 484-7700

20. **Defendant MCGUIREWOODS LLP** - The law firm representing Core-Mark and PFG, complicit in the conspiracy to deprive Plaintiff of his settlement funds.

    a.  MCGUIREWOODS LLP, Gateway Plaza, 800 East Canal Street, Richmond, VA 23219-3916

    b.  804-775-1000

    c.  GKilpatrick@mcguirewoods.com,

    d.  JConnor@mcguirewoods.com,

    e.  jharmon@mcguirewoods.com

    f.  pdillard@mcguirewoods.com

    g.  amanning@mcguirewoods.com

    h.  jadams@mcguirewoods.com

    i.  JCowley@mcguirewoods.com

21. **Defendant SCOTT MCPHERSON**: Effective January 1, 2025, McPherson was promoted to President & Chief Operating Officer (COO) of PFG. He will oversee PFG's Foodservice, Convenience, and Vistar business segments, focusing on the company's growth and overall operations. Defendant McPherson has a **30-year tenure with Core-Mark**, holding various leadership positions, including Senior Vice President roles and serving as President and CEO.

    a.  Scott.McPherson@pfgc.com

    b.  ethics.matter@pfgc.com

    c.  12500 West Creek Parkway, Richmond, VA 23238

    d.  Phone: (804) 484-7700

22. **Defendant CHRIS HOBSON**: Following Defendant Scott McPherson's promotion, Defendant Hobson has been appointed as the new **President & CEO of Core-Mark. With over 20 years at Core-Mark**, Hobson has held positions such as Division President, Vice President of Marketing, Senior

Vice President, and most recently, President & Chief Operating Officer. In his expanded role, he will oversee performance, enterprise growth, marketing, purchasing, merchandising, finance, human resources, and IT.

    a.  Christopher.Hobson@pfgc.com

    b.  ethics.matter@pfgc.com

    c.  1500 Solana Boulevard, Suite 3400, Westlake, TX 76262

    d.  (833) 532-1581

23. **Defendant JOHN CORNYN <u>a.k.a CORNHEAD</u>**: As Texas AG, <u>a private citizen</u>, and US Senator:

    a.  1999 – December 1, 2002: John Cornyn served as the Texas Attorney General.

    b.  December 1, 2002 - January 2, 2003: Defendant Cornyn had resigned as Attorney General but <u>had not yet assumed his role as U.S. Senator and was **a private citizen**</u>.

    c.  January 3, 2003: Cornyn was sworn in as a U.S. Senator from Texas.

    d.  casework_@cornyn.senate.gov

    e.  SenateWebmail@cornyn.senate.gov

    f.  Dallas_Office@cornyn.senate.gov

    g.  517 Hart Senate Office Building, Washington, D.C. 20510 and 5001 Spring Valley Road, Suite 1125 E, Dallas, TX 75244

    h.  Phone: (972) 239-1310 TX  Phone: (202) 224-2934 D.C.

## BACKGROUND

24. Plaintiff was employed by Fleming Companies, Inc. reporting to the CFO, with responsibilities that included managing vendor charge-backs, accruals, and vendor disputes.  Plaintiff realized very quickly that Fleming's books were fraudulent and all charge-backs and related accruals for same were

false (approx. $100M to $1B). Plaintiff wrote a WHISTLEBLOWER letter to the Securities and Exchange Commission (SEC) and testified 3 times in-front of SEC prosecuting attorneys and SEC forensic accountants. Plaintiff was harassed by the SEC employees. Plaintiff was fired for refusal to continue the massive financial fraud, before the company knew Plaintiff had already sent the entire P&L to the SEC and Class Action Lawyers. Plaintiff is still waiting for payment of a very low settlement with Fleming / **Core-Mark**. Fleming Companies, Inc. was a wholesale food distributor that suppled brand-name and private-label food and general merchandise to more than 11,500 retailers, including mass merchandisers, independent retailers, franchised stores, limited assortment stores, and convenience stores. It also owns more than 100 stores that operate under the Food4Less and Rainbow Foods banners.

25. Fleming signed a three-year deal to supply Kmart stores in 1999. In 2/01, Fleming secured a $4.5 billion contract to be the exclusive food and consumable products distributor to all Kmart and Super Kmart stores. Subsequently, Kmart represented 20% of Fleming's sales that year. Fleming's stock began to rise on these developments. Defendants wished to take advantage of this contract to reinflate Fleming's stock price to the levels of the early 1990s. Thus, defendants manipulated and artificially inflated Fleming's earnings by deducting excessive charges from vendor invoices to which it was not entitled. It is not uncommon for large vendors to make deductions from invoices, but Fleming pushed the practice to extremes. Fleming then recorded the deductions as a reduction in expenses, thereby inflating reported earnings. Fleming also inflated its earnings by lengthening the amortization period for long-term assets, by increasing the capitalization rate for interest costs and by lowering the allowance for credit losses.

26. As a result of defendants' false statements, the Company's stock traded at artificially inflated levels, as high as $37.30 per share, permitting Fleming to complete an 8 million share secondary stock

offering, a $200 million Note offering and **the acquisition of Core-Mark International in the spring of 2002**. Also, due to Fleming's artificially inflated earnings, its CEO and CFO received bonuses for 2001 of $2.6 million and $1.15 million, respectively.

27. On 4/24/02, Fleming announced its plan to acquire **Core-Mark** and Head Distributing, for approximately $430 million. Fleming would raise $600 million in an offering of debt/stock to fund the acquisition. Thus, it was important the market continue to have a favorable impression of Fleming's business.

28. On 4/30/02, Fleming executives stated: Fleming had made significant progress with a comprehensive restructuring and efforts to grow and diversify its sources of revenues. Over the past few years, it had closed about one-third of its distribution centers, retaining the majority of the volume and improving the productivity of its remaining facilities, while shifting to more efficient central procurement. A lower cost structure in distribution was allowing the Company to attract new business from conventional and non-conventional customers, and generate strong growth in distribution. With the recently announced acquisitions of **Core-Mark** and Head Distributing, Fleming would serve approximately 50,000 retail locations out of 56 distribution centers. The reorganization in the distribution structure had created significant economies of scale, and by leveraging its case-pick and piece-pick competencies, Fleming would minimize its overall costs, gaining a significant cost and efficiency advantage.

29. On 6/18/02, Fleming announced that the acquisition of **Core-Mark** had been completed. The release stated:

> "Fleming has created a supplier network capable of efficiently distributing products by the individual item, by the case, by the pallet, or by the truckload, to any retail format," said Mark Hansen, Fleming chairman and chief executive officer. **"The acquisition of Core-Mark** continues our drive to amass scale in an industry that benefits greatly from size. It further diversifies our customer base across a wide spectrum of retail formats. Additionally, it presents meaningful sales opportunities for our customers, our vendors and our company." Concurrent with the completion of the **Core-Mark acquisition**, Fleming has completed its offering of $200 million of 9-1/4% Senior Notes due 2010, and 8 million shares of its common stock, plus an additional 1.2 million shares exercised by the underwriters under their over-allotment option. Additionally, the company entered into a new $975 million bank credit facility which consists of a $550 million revolving facility and a $425 million B term loan. Pro-forma for these transactions, Fleming's total share count is approximately 53.8 million shares, and its debt-to-total capital ratio improves from approximately 79% to approximately 76% at the end of the first quarter. The company will have no material maturities of debt until 2007. Moreover, Fleming management continued to reassure analyst and investors that the Company's business was doing well. On 8/1/02, Wachovia Securities analysts visited a former **Core-Mark** office and issued a positive report based on the visit: We recently visited Fleming's national piece-pick distribution headquarters in South San Francisco, California (**the former Core-Mark headquarters**) and met with Rob Allen, Fleming's executive vice president and president, convenience distribution. Mr. Allen was formerly president and chief executive officer of **Core-Mark International, Inc.** We were impressed with management during

our meeting and with the significant new business opportunities available to Fleming through the company's national piece-pick capability. We believe national coverage and increased scale should help Fleming's piece-pick distribution operations win additional new business and increased market share. For example, we believe that the **Core-Mark/Fleming combination** provided the company the national scale that was necessary in the recently announced business win with Target."

Integration. " We believe that Fleming is pursuing an integration strategy that should help to reduce challenges associated with acquisition integration. Fleming plans to migrate to the **Core- Mark** technology platform. The company's goal will be to integrate the **Core-Mark** technology across the Fleming piece-pick network by the end of March 2003. Integration of Fleming's 7 piece-pick distribution centers into the **Core-Mark** platform is to begin in August. The company is currently in the process of converting to common item numbers (SKUs) across piece-pick operations. We note that piece-pick distribution centers typically carry about 7,500 SKUs, significantly fewer than other full-line distribution centers, we believe this may help reduce complexities in some areas of integration. Additionally, we believe the integration process should benefit from the retention of key senior management of **Core-Mark**, Fleming's integration/restructuring experience, and the conversion of only a small number of distribution centers (7) into an effectively operated **Core-Mark** system (19 distribution centers)."

30. **The Origin of "Cornhead": A Legal and Political Cover-Up**: In December 2002, during the transition between John Cornyn's resignation as Texas Attorney General and his inauguration as a U.S. Senator, an event unfolded at the U.S. Department of Labor (DOL) that led to the infamous nickname "Cornhead."

31. **Timeline of Events**

    a.  1999 – December 1, 2002: John Cornyn served as the Texas Attorney General.

    b.  December 1, 2002 – January 2, 2003: Cornyn had resigned as Attorney General but had not yet assumed his role as U.S. Senator.

    c.  January 3, 2003: Cornyn was sworn in as a U.S. Senator from Texas.

32. **The Incident at the Department of Labor:** During Cornyn's brief period as a private citizen, a Texas corporate whistleblower, this Plaintiff, sought assistance from the U.S. Department of Labor regarding Fleming Companies, Inc., a Texas-based corporation engaged in fraudulent financial practices. Fleming's massive illegal vendor chargebacks and financial misstatements had contributed to the collapse of K-Mart Corporation and, ultimately, Fleming itself through a decade of litigation and bankruptcy restructuring. While attempting to obtain assistance from the DOL, the whistleblower

encountered a federal representative who, unable to pronounce "Cornyn," instead referred to him as "Cornhead." "Call Cornhead." When this Plaintiff, the whistleblower, questioned this name, the representative mockingly repeated it and then shouted aggressively:

    a.  "Call CORNHEAD!" "Fuck-off!"

33. The DOL representative then slammed the federal office door with an audible and forceful lock, blocking access to government services. As the corporate whistleblower protected under federal law, the denial of access constituted a clear violation of civil rights under federal statutes.

**34. Federal Laws Violated:**

    a.  **Conspiracy Against Rights Under Color of Law (18 U.S.C. § 241)** This law makes it a federal crime for two or more individuals—including government officials—to conspire to injure, oppress, threaten, or intimidate a person in the exercise of any right or privilege protected by the Constitution.

        i.  The DOL representative, acting under color of law, denied access to a federally protected agency for retaliatory purposes against this Plaintiff whistleblower.

        ii.  The DOL's refusal to assist after SEC officials had also been ordered to "stand down" further suggests an organized effort to silence this Plaintiff whistleblower and prevent exposure of fraudulent financial practices.

    b.  **Deprivation of Rights Under Color of Law (18 U.S.C. § 242)** This law criminalizes the willful deprivation of constitutional rights by any government official acting under color of law. By locking the door, denying assistance, and directing verbal abuse at the whistleblower, the DOL official engaged in a clear violation of this statute. As a former Texas Attorney General, Cornyn had a duty to protect whistleblowers but instead was implicated in a system designed to shield corporate corruption.

**35. Fleming Companies' Collapse & SEC Corruption**

    a.  This Plaintiff whistleblower's concerns were validated when, in 2004, the Securities and Exchange Commission (SEC) formally charged former executives of Fleming Companies with securities fraud for materially misstating earnings from late 2001 through mid-2002. SEC Press Release 2004-129 confirms that Fleming's fraudulent activities directly contributed to its bankruptcy in April 2003.

    b.  Despite providing crucial whistleblower testimony on three occasions at the SEC regional office on Cherry Street in Fort Worth, Texas, this Plaintiff whistleblower was later informed that the SEC had been instructed to "stand down" from further assisting.

    c.  This directive indicates potential political interference from Cornyn or other officials attempting to suppress further legal action against Fleming's executives.

**36. Defendant John Cornyn's Role in the Conspiracy:**

    a.  Cornyn's legal and ethical obligations spanned three distinct periods:

        i.  As Texas Attorney General (1999 – December 1, 2002) Failed to investigate or prosecute Fleming Companies despite clear financial misconduct. Defendant Cornyn failed to protect this Plaintiff Texas-based whistleblower seeking justice.

        ii.  As a Private Citizen (December 1, 2002 – January 2, 2003) Cornyn was named by the Department of Labor as the key figure whistleblowers should contact—despite <u>not holding office at the time.</u> This confirms behind-the-scenes coordination to obstruct whistleblower protections to save his election to US Senate.

        iii. As a U.S. Senator (January 3, 2003 – Present)

            1.  Defendant Cornyn benefited politically from protecting corporate interests.

2. Defendant Cornyn influenced SEC decisions to block further whistleblower protections, aiding Fleming's (CORE-MARK) top executives in evading further liability.

## 37. Conclusion: The "Cornhead" Cover-Up

a. The slamming of the Department of Labor's doors and the hostile ejection of this Plaintiff as a protected whistleblower were not just acts of bureaucratic incompetence but clear violations of federal civil rights laws.

   i. **18 U.S.C. § 241 (Conspiracy Against Rights) and 18 U.S.C. § 242 (Deprivation of Rights)** were violated when federal officials acted in concert to suppress information regarding corporate fraud and SEC corruption.

b. The Fleming Companies scandal, which contributed to the bankruptcy of K-Mart and Fleming itself, could have been mitigated if whistleblower protections had been enforced.

c. The nickname "Cornhead" originated from this federal abuse, forever linking John Cornyn's name to a period of corporate fraud, whistleblower suppression, and government corruption.

d. Despite serving as a U.S. Senator for over two decades, **Cornyn has never been held accountable for these violations of federal law.**

e. The Origin of "Cornhead": John Cornyn's Crimes as Texas Attorney General, Civilian, and U.S. Senator

38. Each period carries its own criminal implications, reinforcing Defendant Cornyn's role in violating federal whistleblower protections, engaging in obstruction of justice, and depriving a corporate whistleblower of constitutional rights.

39. Defendant Cornyn's Additional Laws Violated:

    a. 18 U.S.C. § 241 – Conspiracy Against Rights

    b. 18 U.S.C. § 1505 – Obstruction of Proceedings Before Federal Agencies

    c. 18 U.S.C. § 1512 – Tampering with a Witness or Informant

40. 3. Crimes as a U.S. Senator (January 3, 2003 – Present)

    a. Upon being sworn into the U.S. Senate, Cornyn's political influence expanded, allowing him to further ensure that:

    b. The SEC was ordered to "stand down" and cease further investigation into Fleming's corporate fraud.

    c. This Plaintiff's Whistleblower testimony was ignored, despite being presented at the SEC's Fort Worth regional office three times.

    d. No federal prosecution occurred against Cornyn's corporate allies, ensuring Fleming's (Core-Mark) executives were shielded from full accountability.

41. The SEC itself later confirmed that Fleming Companies, Inc. had engaged in massive financial fraud —but this only happened after the company collapsed in 2003. By then, whistleblower protections had been dismantled, and Cornyn's influence had successfully delayed further legal action, as delays exist to the day of this Federal Complaint.

42. Fleming Companies' SEC Fraud & Bankruptcy

43. Plaintiff's whistleblower concerns were validated when, in 2004, the Securities and Exchange Commission (SEC) formally charged former executives of Fleming Companies with securities fraud for materially misstating earnings from late 2001 through mid-2002 due to this Plaintiff's "deep-throating" facts to the Dallas Morning News that were always published next day - which created a massive fight between Fleming-CoreMark's and K-Mart's legal counsel in the press - all of which

was puppet-mastered by this Plaintiff Whistleblower. Ultimately defeating "Cornhead's" feeble attempts to stop the prosecution and total destruction of both corporations.

    a.  SEC Press Release 2004-129 confirms that Fleming's fraudulent activities directly contributed to its bankruptcy in April 2003.

44. Defendant John Cornyn's involvement in corporate fraud, whistleblower suppression, and federal obstruction of justice spans three distinct periods:

    a.  As Texas Attorney General (Failure to Investigate & Corporate Protection)

    b.  As a Civilian (Continued Conspiracy Against Whistleblower Protections)

    c.  As a U.S. Senator (Political Influence to Halt Federal Prosecutions)

45. Each role carries its own set of legal violations, making Defendant Cornyn directly complicit in the systematic destruction of this Plaintiff's whistleblower rights and the deliberate suppression of financial fraud investigations.

46. This total stonewalling from the SEC was a direct result of Cornyn's RICO-level retaliation against whistleblower efforts. Despite the legal duty of the SEC to investigate securities fraud, the agency— compromised by Cornyn's political influence—refused to engage with a protected whistleblower.

47. This marked a pattern of obstruction spanning years, showing that Cornyn's corruption extended beyond individual cases like Fleming Companies / Core-Mark — it is a long-term, systematic effort to suppress financial fraud investigations and protect corporate criminals at the highest levels.

**48. Statement on Statute of Limitations and Ongoing Concealment of Crimes Committed by Defendant John Cornyn and other Defendants named herein:**

49. The statute of limitations does not apply to the crimes committed by Defendant John Cornyn as Texas Attorney General, a private citizen, and a U.S. Senator because these **crimes have never been investigated by state or federal authorities and are still being actively concealed**.

50. Under 18 U.S.C. § 3282(a), the five-year **statute of limitations for non-capital federal offenses only begins once a crime has been discovered and an official investigation has been conducted**. <u>**In cases involving governmental corruption, obstruction of justice, or conspiracy under color of law, courts have recognized that the statute of limitations does not begin to run until the government has taken action to expose and investigate the wrongdoing.**</u>

51. <u>**Furthermore, under the doctrine of fraudulent concealment, when crimes are intentionally hidden or suppressed, the statute of limitations is tolled (paused) until the misconduct is uncovered**</u>. In this case, Defendant Cornyn's criminal actions—including conspiracy against whistleblowers, obstruction of justice, and depriving citizens of their rights under color of law—have never been properly investigated by any law enforcement entity.

52. **Because the SEC, Department of Justice, and other agencies were ordered to "stand down" regarding the Fleming Companies, Inc. and other fraud cases, these crimes remain un-prosecuted and effectively ongoing. The statute of limitations does not start until a formal state or federal investigation takes place—which, to date, has never happened due to continued political interference.**

53. Until an official investigation into ALL DEFENDANT's crimes is launched, the statute of limitations remains suspended, meaning he and his accomplices can still be held legally accountable.

54. Official Statement on Seeking Criminal, Civil, and RICO Prosecution of Defendant John Cornyn and Financial Restitution from All Involved including but not limited to CORE-MARK HOLDINGS CO, INC.

55. Defendant is officially seeking criminal, civil, and RICO (Racketeer Influenced and Corrupt Organizations Act) prosecution of Defendants for their continued involvement in conspiracy against rights, obstruction of justice, and deprivation of rights, and deprivation of rights under color of law.

56. Additionally, I am seeking full financial restitution from Defendant Cornyn and all individuals, corporations, and government entities involved in the deliberate suppression of this Plaintiff's whistleblower protections, obstruction of federal investigations, and financial damages incurred due to the illegal actions taken against this Plaintiff.

57. The statute of limitations does not apply, as these crimes have never been properly investigated and are still actively concealed by those in power. I demand a full and transparent investigation into Defendant Cornyn's and Co-Defendant's role in Conspiring with corporate interests to suppress financial fraud investigations. Orchestrating retaliation against a corporate whistleblower through the Department of Labor and the SEC and compromised law firms. Engaging in a pattern of RICO-related corruption to shield corporate criminals from prosecution.

58.  Plaintiff will pursue every available legal avenue to hold John Cornyn and his co-conspirators co-Defendants accountable for their criminal actions and financial, emotional, and physical damages inflicted upon me.

59. Defendants ignored their legal responsibility to pay the WHISTLEBLOWER, the Plaintiff to this Federal Complaint, the very low financial settlement.  This Plaintiff, a Federally protected Whistleblower, agreed to the very low settlement of $60,000 to encourage swift payment by the Defendant's to this complaint **Core-Mark Holdings, Co. Inc. / PFG** to minimize the complete destruction of Plaintiff's life - to date the settlement payment has not been paid by Defendants to Plaintiff.

60. This Plaintiff forced the reluctant S.E.C to act and helped write and edit the Class Action for the law firm (Milberg Weiss) MILBERG WEISS BERSHAD HYNES & LERACH LLP. (the "Meanest Law Firm In America" Fortune Magazine 2006) of the Securities Fraud Litigation that was centralized in the Eastern District of Texas, Texarkana Division, under Case No. 5:02-cv-00178. This Plaintiff

received no money, favors or legal help from Milberg Weiss, as this Plaintiff was the

WHISTLEBLOWER.  The litigation actually destroyed Fleming Companies, Inc. and K-Mart

Corporation forcing the Federal Court to order Core-Mark Holdings Co, Inc to pay this Plaintiff

Whistleblower and Vendor / Creditor Plaintiff's **see Eastern District of Texas, Texarkana Division,**

**Case No. 5:02-cv-00178 ATTACHED BY REFERENCE and EXHIBT A - "working copy".**

61. Plaintiff's life was destroyed, even though Whistleblower protections exist in Whistleblower

Protection & Retaliation Laws

    a.  Sarbanes-Oxley Act (18 U.S.C. § 1514A): Protects whistleblowers from retaliation and

       requires corporations to honor financial obligations to whistleblowers.

    b.  Dodd-Frank Act (15 U.S.C. § 78u-6(h)): Prohibits corporations from interfering with

       whistleblower awards.

    c.  Racketeer Influenced and Corrupt Organizations Act (RICO) – 18 U.S.C. § 1962: Given the

       fraudulent schemes and ongoing deprivation of funds, RICO violations are evident.

### NEW OPPOSING COUNSEL CONDUCT EXPECTATIONS

62. The Plaintiff is asking all Counsel, opposing Counsel, Lawyers, legal aids, legal employees, and like

professionals to follow the "Best Practices and Rules of Civil Procedure" and Plaintiff has expectations

of opposing counsel to specifically follow A.D.A, their Code of Conduct and "Rules of Civil

Procedure" or face additional litigation.  Defendant MCGUIREWOODS LLP can not represent Core-

Mark / PFG as a Co-Defendant to this Federal Civil Complaint.

### JURDICIAL CONDUCT EXPECTATION

63. The Plaintiff is asking this Court and has expectations of this Court to specifically follow the below

"Code of Conduct for United States Judges as specifically outlined in 5 Canons in the United States

Judiciary Policy Code of Conduct for United States Judges" as defined in part herein below:

    a.   "Canon 1: A Judge Should Uphold the Integrity and Independence of the Judiciary"

    b.   "Canon 2: A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities"

    c.   "Canon 3: A Judge Should Perform the Duties of the office Fairly, Impartially and Diligently."

    d.   "Canon 4: A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial office"

    e.   "Canon 5: <u>A Judge Should Refrain From Political Activity</u>"

### SCIENTER AND SCHEME ALLEGATIONS

64. SCIENTER in this case refers to the Defendants culpable state of mind. In other words, scienter is the Defendant's knowledge that their acts and conduct is wrongful, and Defendants had intent to act and NOT ACT despite this knowledge. Defendants CULPABLE MENTAL STATES are illustrated by their intentional actions of and with respect to the nature of their conduct and as a result of their conduct and it was their conscious objective and desire to engage in this conduct and cause the result as outlined herein a d below:

65. **Defendants Core-Mark and PFG** failed to honor settlement payments owed to the Plaintiff from the Fleming Companies Class Action Settlement and Plaintiff's financial settlement agreement.

66. Defendant McGuireWoods LLP aided in the conspiracy to deprive the Plaintiff of his funds.

**EXHIBIT E and EXHIBIT J**

67.  Defendant John Cornyn obstructed justice by interfering with the Plaintiff's ability to seek assistance from federal agencies (SEC, DOJ, DOL) to recover his financial settlement, that continues to the date of this Federal Action and possibly beyond.

68.  The defendants engaged in wire fraud, unlawfully redirecting Plaintiff's settlement payments and misallocating funds. **EXHIBIT F and EXHIBIT D**

69.  The defendants engaged in retaliatory actions against Plaintiff for exposing securities fraud and corporate misconduct.

70. RICO Violations (18 U.S.C. § 1962) – Defendants engaged in a pattern of racketeering activity by conspiring to misallocate settlement funds.

71. Obstruction of Justice (18 U.S.C. § 1505) – Defendants interfered with Plaintiff's ability to obtain federal legal assistance.

72. Conspiracy to Defraud the U.S. (18 U.S.C. § 371) – Defendants worked to block Plaintiff from recovering his settlement. **EXHIBIT J - email response dated 2/4/2025**

73. Deprivation of Rights Under Color of Law (18 U.S.C. § 242) – Defendant John Cornyn uses his political influence to suppress Plaintiff's rights while the Texas AG, a civilian, and the US Senator from Texas. **EXHIBIT B** criminal complaint.

74. Wire Fraud (18 U.S.C. § 1343) – Defendants used electronic communications to misallocate Plaintiff's settlement funds.

75. Whistleblower Retaliation (18 U.S.C. § 1513(e)) – Defendants retaliated against Plaintiff for exposing corporate fraud.

76. Fraud & Breach of Contract – Defendants violated a settlement agreement and misrepresent material facts to this day.

77. Defendants are guilty of intimidating, threatening, abuse, and harmful conduct of the Plaintiff - meaning, but is not limited to, the following conduct and intentional infliction of:

   a. Defendants are guilty of Moral turpitude - meaning conduct that is wrong in itself even if no statute were to prohibit the conduct.

   b. Defendants are guilty of Willful Misconduct – meaning intentional disregard of good and prudent standards of performance or proper conduct under the Contract with knowledge that it is likely to result in any injury to any person or persons or loss or damage of property, which occurred here.

    c.   Defendants are guilty of Intentional Wrongdoing meaning an act or omission taken or omitted by a Party with knowledge or intent that injury or damage could reasonably be expected to result against the Plaintiff, which occurred here.

    d.   Defendants are guilty of Harassment, intimidation, and bullying - meaning any gesture, any written, verbal, passive act, or physical act, or any electronic communication, whether it be a single incident or a series of incidents that the Defendants are guilty of willful, repeated Harassment, intimidation, and passive / active bullying of the Plaintiff.

78. Plaintiff seeks Compensatory damages; as requested by Plaintiff

79. Plaintiff seeks Lost profits; as requested by Plaintiff

80. Plaintiff seeks Punitive damages, as requested by Plaintiff

81. Plaintiff seeks Lost wages; as requested by Plaintiff

82. Plaintiff seeks Expectation damages; and Restitutionary damages in order to prevent unjust enrichment of the defendants.

83. Punitive Damages: The plaintiff also demands to recover punitive damages, which are assessed to punish the Defendants, for Actual fraud, malice, and oppression.

84. Defendants are criminally guilty and civilly liable for their intentional malicious actions as described and outlined above.

85. The Plaintiff demands:

    a.   Treble (triple) damages under RICO (18 U.S.C. § 1964(c)).

    b.   $60,000 plus inflation, interest, and additional damages.

    c.   Compensatory and punitive damages.

    d.   Attorney's / Pro Se Plaintiff's fees and costs.

    e.   Injunctive relief prohibiting further interference with Plaintiff's whistleblower rights.

    f.   A jury trial to decide the case.

86. This case presents serious allegations of financial fraud, obstruction of justice, and political

    interference, seeking substantial damages and injunctive relief to ensure accountability.

87. <u>PLAINTIFF DEMANDS A TRIAL BY JURY</u>

## FACTUAL BASIS FOR CLAIMS

88. Settlement Agreement was Filed and Approved by U.S. District Court, Eastern District of Texas,

    Texarkana Division

    a.   Core-Mark Holdings Co Inc. was established as part of the Fleming Companies securities

        fraud litigation settlement, in which this Plaintiff played a pivotal role as THE

        WHISTLEBLOWER.

    b.   Court-approved settlement agreement entitles Plaintiff to compensation, which Core-Mark

        and its successor entities, including PFG, have wrongfully withheld and / or misallocated.

89. Whistleblower Contributions and Retaliation

    a.   Plaintiff's whistleblowing efforts directly contributed to the exposure of fraudulent vendor

        chargebacks and accrual mismanagement within Fleming Companies.

    b.   Despite protections under Sarbanes-Oxley (SOX) and the Dodd-Frank Act, Plaintif faced

        persistent retaliation and non-payment.

90. Fraudulent Redirection of Settlement Funds

    a.   Evidence, including documentation from the Texas Comptroller (CPA Glenn Hegar), confirms

        that Core-Mark and/or PFG sent payments in my name to my former attorney, Barrett W.

        Stetson, after his termination for Cause in 2004. **EXHIBIT F**

    b.   His widow, Janet B. Stetson, has now admitted to wrongfully possessing and cashing

        settlement or other checks intended for me. A criminal complaint has been filed. **EXHIBIT F**

91. Repeated Notifications and Culpability of Core-Mark/PFG

    a.  Since 2004, Plaintiff has repeatedly informed Core-Mark of the attorney's termination for

        Cause and requested direct payment with updated contact information.

    b.  Despite these notifications, Core-Mark and PFG continued to misdirect payments, knowingly

        depriving Plaintiff of Plaintiff's rightful settlement.

## LEGAL BASIS FOR FOR CLAIMS

92. Violations of RICO (18 U.S.C. § 1964(c)) **EXHIBIT B and EXHIBIT E**

93. Violation of Whistleblower Protection & Retaliation Laws

    a.  Sarbanes-Oxley Act (18 U.S.C. § 1514A): Protects whistleblowers from retaliation and

        requires corporations to honor financial obligations to whistleblowers.

    b.  Dodd-Frank Act (15 U.S.C. § 78u-6(h)): Prohibits corporations from interfering with

        whistleblower awards.

    c.  Racketeer Influenced and Corrupt Organizations Act (RICO) – 18 U.S.C. § 1962: Given the

        fraudulent schemes and ongoing deprivation of funds, RICO violations are evident.

94. Theft, Misallocation, and Non-Payment of Settlement

    a.  Wire Fraud (18 U.S.C. § 1343)

    b.  Mail Fraud (18 U.S.C. § 1341)

    c.  Bank Fraud (18 U.S.C. § 1344)

    d.  Embezzlement (18 U.S.C. § 656, § 666)

    e.  Identity Theft (18 U.S.C. § 1028)

    f.  Unjust Enrichment, Breach of Contract, and Conversion (Civil Theft)

95. Failure to Comply with Court Orders

    a.  Criminal Contempt of Court (18 U.S.C. § 401)

b.  Civil Contempt of Court

c.  Conspiracy to Defraud (18 U.S.C. § 37)

d.  Deprivation of Property Under Color of Law (18 U.S.C. § 242) **EXHIBIT B**

## PLAINTIFF'S CLAIMS & DEMANDS FOR RELIEF

### Against All Defendants

96. **Count I**: Violations of RICO (18 U.S.C. § 1962(c)) Defendants engaged in a pattern of racketeering activity by conspiring to misallocate settlement funds. Plaintiff suffered financial harm due to fraudulent misallocation of funds.

97. **Count II**: Obstruction of Justice (18 U.S.C. § 1505) John Cornyn and Defendants obstructed Plaintiff's ability to receive assistance from federal agencies (SEC, DOJ, DOL) regarding Plaintiff's whistleblower factual claims. **EXHIBIT A and EXHIBIT B**

98. **Count III**: Conspiracy to Defraud the United States (18 U.S.C. § 371) Defendants conspired to interfere with the lawful functions of federal agencies to prevent Plaintiff from recovering Plaintiff's settlement and Federal agency assistance (SEC, DOJ, DOL).

99. **Count IV**: Deprivation of Rights Under Color of Law (18 U.S.C. § 242) John Cornyn, acting under color of law, deprived Plaintiff of his legal rights by restricting SEC and DOL assistance.**EXHIBIT B**

100. **Count V**: Wire Fraud (18 U.S.C. § 1343) Defendants electronically communicated and conspired to redirect settlement funds from Plaintiff. **EXHIBIT D and EXHIBIT F**

101. **Count VI**: Whistleblower Retaliation (18 U.S.C. § 1513(e)) Defendants engaged in retaliatory actions against Plaintiff for exposing securities fraud. **EXHIBIT B and EXHIBIT E**

102. **Count VII**: Fraud & Breach of Contract - Defendants misrepresented facts and breached settlement obligations.

103. Plaintiff demands Treble (triple) damages under RICO (18 U.S.C. § 1964(c)).

104. Plaintiff Demands original 2003 settlement of $60,000 plus inflation, interest, and damages.

105. Plaintiff Demands Compensatory and punitive damages.

106. Plaintiff Demands Attorney's / Pro Se Plaintiff's fees and costs.

107. Plaintiff Demands Injunctive relief prohibiting further interference with Plaintiff's whistleblower rights.

108. Plaintiff requires the remedies provided in The Rules of Civil Procedure and Federal Law to compensate for the Crime(s) and Torts by the Defendants outlined herein.

109. Plaintiff incorporates by reference ¶¶ 1-131.

110. Plaintiff incorporates by reference US Federal Court, Eastern District of Texas, Texarkana Division, Case No. 5:02-cv-00178

111. Plaintiff incorporates by reference **EXHIBITS A - J**

112. Each of the defendants: knew or had access to the material non-public information about this Complaint and related Federal Complaints.

113. Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

114. Plaintiff has suffered damages related to the policies and procedures conspired by the Defendant(s) and willfully executed by Defendants.

115. By reason of such wrongful conduct, the Individual Defendants are liable pursuant to The Rules of Civil Procedure. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with the improper legal mistreatment received here.

116. Plaintiff prays for relief from the schemes and harassment outlined.

117. Plaintiff prays for swift relief as required by Federal Law.

118. Imposition of enforcement and sanctions are just and proper.

119. Plaintiff prays for such other relief to which Plaintiff may be justly entitled.

120. Damages which include pain, suffering, anguish, intentionally inflicted harm.

121. Exemplary Damages: The conduct committed by Defendant(s) against Plaintiff is the type of conduct evidencing actual malice on Defendant(s) part that allows the imposition of exemplary damages. Plaintiff additionally brings this suit for these damages, which exceed the minimum jurisdictional limits of State court.

122. Plaintiff prays that the citation and notice issue as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this petition.

123. Plaintiff prays that, on hearing, the Court enter a permanent injunction enjoining Defendant(s), in conformity with the allegations of this petition, from the acts set forth above.

124. Plaintiff prays for judgment against Defendants in the sum exceeding the minimum jurisdictional limits of this court for actual damages as alleged, for exemplary damages, for costs of court, loss-of-income and for general relief.

125. Plaintiff prays for fees, expenses, costs, loss of income and all legal fees.

126. Plaintiff prays for general relief and safety.

**PRAYER**

127. WHEREFORE, Plaintiff prays for judgement as follows: declaring this action to be proper action, awarding damages, including interest; and such relief as the Court may deem proper.

128. Plaintiff prays that the citation and notice issued as required by law and that the Court grant injunctions, enforcement, sanctions, and all other relief requested in this Petition.

129. Plaintiff prays that, on final hearing, the Court enter a permanent injunction enjoining Defendants, in

conformity with the allegations of this petition, from the acts set forth above.

130. Plaintiff prays for judgment against all Defendants in the sum exceeding $24,230,000.


## JURY DEMAND

131. Plaintiff demands a trial by jury. The right to appear pro se in a civil case in federal court is defined by

statute 28 U.S.C. § 1654 and The Seventh Amendment to the U.S. Constitution ensures that citizens'

civil cases can be heard and decided upon by a jury. The jury trial provides a forum for all the facts to

be presented, evaluated impartially, and judged according to the law.

DATED: February 10, 2025
Respectfully Submitted,

J. Alan Konecny
125 W. Virginia Ave, # 265
Gunnison, CO. 81230
Tel: 469-734-2453
jalankonecny@gmail.com

By: /S/ J. Alan Konecny
J. Alan Konecny
Plaintiff
Pro Se

## EXHIBIT LIST

132. EXHIBIT A - Fleming Class Action - original working document (Word doc available)
133. EXHIBIT B - Filed Criminal Complaint against Defendant John Cornyn
134. EXHIBIT C - Settlement Demand and Offer to Settle without Litigation
135. EXHIBIT D - Factual Legal Basis for Claims sent to Defendants
136. EXHIBIT E - Plaintiff's Response Email to Defendants
137. EXHIBIT F - Filed Criminal Complaint against Plaintiff's fired corrupt attorney
138. EXHIBIT G - 2 Email communications from Defendants
139. EXHIBIT H - Texas Unclaimed Property Owner Claim Form 53-120 (In Camera) 2018
140. EXHIBIT  I -  Auto-responder email from Defendants and email receipt verifications

## ATTACHED FORMS LIST

141. Civil Cover Sheet Form JS-44
142. Summons Form AO-440
143. Waiver of The Service of Summons Form AO-399
144. Motion to Appear by Video
145. Motion to File Via Email
146. Motion to Preserve For Appeal
147. IFP Form AO-239 and Related Motion
148. Rule 56 Motion
149. MOTION FOR TEMPORARY RESTRAINING ORDER (TRO) AND PRELIMINARY INJUNCTION
150. Plaintiff's Motions for "Service of Process" by US MARSHALL FORM USM-285
151. MOTION FOR TEMPORARY RESTRAINING ORDER (TRO) AND PRELIMINARY INJUNCTION

## Cc: LIST

152. Scott.McPherson@pfgc.com
153. christopher.Hobson@pfgc.com
154. ethics.matter@pfgc.com  lol!
155. Senator Cornyn <SenateWebmail@cornyn.senate.gov>,
156. Casework (Cornyn)" <casework_@cornyn.senate.gov>,
157. Office, Dallas (Cornyn)" <Dallas_Office@cornyn.senate.gov>
158. public.integrity@usdoj.gov,
159. whistleblower@sec.gov,
160. civil.feedback@usdoj.gov,
161. GKilpatrick@mcguirewoods.com,
162. WhistleblowerOffice@mail.house.gov,
163. oce@mail.house.gov,
164. mailbox_office@ethics.senate.gov,
165. crm.foia@usdoj.gov,
166. Dillard, Patrick" <pdillard@mcguirewoods.com>,
167. George.Holm@pfgc.com,
168. Bill.Marshall@pfgc.com,
169. JHarmon@mcguirewoods.com,
170. jconnor@mcguirewoods.com,
171. amanning@mcguirewoods.com,
172. solder@mcguirewoods.com,
173. Brent.King@pfgc.com,
174. oig.hotline@usdoj.gov,
175. JCowley@mcguirewoods.com,
176. ethicscommittee@mail.house.gov,
177. twalker@mcguirewoods.com,
178. jadams@mcguirewoods.com,
179. Rhiannon Gilardi <Rhiannon.Gilardi@cpa.texas.gov>,
180. glenn.Hegar@cpa.texas.gov,
181. criminal.Division@usdoj.gov,
182. info@gop.com,
183. Judiciary_Whistleblower@mail.house.gov

## CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the foregoing document was served upon each

corporation, individual, attorney of record, or party in accordance with Rule 5 of the Federal Rules of

Civil Procedure. Service was made by email, with a **Waiver of the Service of Summons** included, on

or about **February 10, 2025**. Additionally, electronic service was effected via the Defendant's

designated email server or email address as detailed herein.

 In the event the Defendants do not agree to waive service pursuant to **Rule 4(d)** of the Federal Rules

of Civil Procedure, Plaintiff respectfully moves this Court for an order directing service of process to be

carried out by the **United States Marshals Service**. Under **Rule 4(c)(3)** of the Federal Rules of Civil

Procedure, the Court must order that service be made by a U.S. Marshal if the Plaintiff is authorized to

proceed **in forma pauperis**. Furthermore, under **Rule 4(d)(2)**, if Defendants fail, without good cause,

to waive service, they are obligated to bear the costs of service.

 This Court has been requested to ensure that all necessary litigation documents from the Plaintiff are

served upon the Defendants through the U.S. Marshals Service to maintain compliance with the

**Americans with Disabilities Act (ADA)** and the **Federal Rules of Civil Procedure**. Plaintiff's

statutory right to appear **pro se** in federal court is affirmed under **28 U.S.C. § 1654**.

 Plaintiff has submitted **Form USM-285** for each Defendant to facilitate service.

 Additionally, Plaintiff has filed a **Motion to Proceed in District Court Without Prepaying Fees or

Costs (In Forma Pauperis)** with this Court, pursuant to **28 U.S.C. § 1915**. Due to the financial

hardship caused by the acts underlying this complaint and the insufficiency of Plaintiff's VA disability

benefits, Plaintiff is unable to pay the fees associated with service of process and other court costs.

/S/ J. Alan Konecny

J. Alan Konecny Plaintiff Pro Se